UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) |
| v. | ) Case No. 1:19-cr-00049-HAB-SLC |
| | ) |
| | ) |
| TIMOTHY L. COATS | ) |

## **OPINION AND ORDER**

Before the Court is a Motion for Hearing for Modification of Pretrial Detention Order filed by *pro se* Defendant on November 12, 2019. (ECF 43). The Government filed its response on November 26, 2019. (ECF 51). On December 11, 2019, the Court received Defendant's reply, dated December 6, 2019. (ECF 62). The matter is thus ripe for ruling. For the following reasons, Defendant's Motion (ECF 43) is DENIED.

### A. Background

Defendant was initially charged on May 31, 2019, by way of a criminal complaint, with possession and distribution of controlled substances, possession of a firearm in furtherance of a drug trafficking crime, and being a felon in possession of a firearm.[1] (ECF 1). On June 4, 2019, the Court held a combined probable cause and detention hearing. (ECF 13). The hearing was electronically recorded and the Court has reviewed the recording in reaching its decision here.

At the combined hearing, the Government offered the testimony of Fort Wayne Police Officer and FBI Task Force Officer Darrin Stroyer. Officer Stroyer testified as to the investigation detailed in the affidavit filed in support of the Complaint (ECF 1), as well as Defendant's alleged membership in the Mafia street gang in Fort Wayne. Officer Strayer also

---

[1] Defendant has since been charged by way of a seven-count Indictment. (ECF 17).

testified that Defendant had attempted to intimidate a witness during a state criminal case against a fellow gang member.  The Government produced screenshots from various music videos publicly available on YouTube showing Defendant appearing to threaten cooperating witnesses in state criminal cases, handling firearms, and referencing his gang membership.  Officer Stroyer further testified that Defendant had recently been charged in state court with attempted murder and had coached the State's key witness, the victim, on how to file an affidavit retracting his identification of Defendant as his shooter, resulting in the case's dismissal.  Specifically, Officer Stroyer claimed to have viewed electronic messages sent from the Allen County Jail using Defendant's jail pin-number, detailing how to do just that, Defendant's counsel[2] cross-examined Officer Strayer on Defendant's alleged gang membership, possible alternative explanations for Defendant's behavior during the state court case, whether Defendant's speech in the YouTube videos was protected by the First Amendment, and whether Officer Stroyer could conclusively show that Defendant was a gang member or handled actual firearms in the YouTube videos.  Defense Counsel further questioned whether someone else could have sent the electronic messages regarding the affidavit using Defendant's credentials.

During argument as to the issue of pretrial detention, the Government noted that pursuant to 18 USC § 3142(e)(3), there was a rebuttable presumption in favor of detention raised by both the narcotics and firearms charges.  In addition to adopting the arguments made in favor of probable cause, the Government also argued Defendant's criminal history, as contained in United States Probation Department Pretrial Services Report (ECF 10), weighed in favor of detention. More specifically, the Government noted Defendant had multiple violations of state court bonds, probation, and court supervision, and that Defendant was on state court supervision when the

---

[2] Defendant was initially represented by court appointed counsel.  (ECF 7, 8, 11).  Defendant has since elected to proceed *pro se* in this matter.  (ECF 36, 38).

alleged illegal conduct in this case occurred.  Finally, Defendant had resisted arrest when law enforcement attempted to arrest him for the attempted murder, leading officers on a high-speed chase, barricading himself in his grandfather's home, and requiring the intervention of a SWAT team.  (ECF 1 at 10).  The Government's complaint also alleged that upon Defendant's arrest, a firearm was recovered in his grandfather's home.  (*Id.*).  Defendant's counsel in turn argued that Defendant had in fact successfully completed periods of home detention, was willing to abide by conditions such as confinement at a halfway house or electronic monitoring and argued that Defendant had never failed to appear for a court or probation hearing.  Counsel also argued that Defendant had been employed at Express Staffing, though provided no verification, and that he had attended and was planning to attend school at Indiana Tech.

The Court made an oral ruling, and issued a written order (ECF 16), granting the Government's motion for pretrial detention.  Specifically, the Court found that there was a rebuttable presumption pursuant to 18 USC § 3142(e)(3) that no condition or combination of conditions would reasonably assure Defendant's appearance or the safety of the community.  (*Id.* at 2).  This was because Defendant was charged with an offense under the Controlled Substance Act carrying a maximum sentence of ten or more years imprisonment, and because Defendant was charged with an offense under 18 U.S.C. § 924(c).  (*Id.*).  Additionally, the Court found that Defendant failed to introduce sufficient evidence to rebut this presumption.  (*Id.* at 3).

Additionally, though, the Court found the Government had proven, by clear and convincing evidence, that no conditions of release would reasonably assure the safety of the community; and by a preponderance of the evidence, that no condition or combination of

conditions of release will reasonably assure Defendant's appearance as required.[3] In support of its finding, the Court cited the weight of the evidence against Defendant; the lengthy period of incarceration Defendant faces if convicted; Defendant's history of alcohol and substance abuse; Defendant's lack of stable employment; and Defendant's prior violation of probation, parole, or supervised release. (*Id.*). As the Court explained at the hearing, it especially gave weight to the Defendant's state court history, including the three state court cases in the past ten years where Defendant had some form of pre or post-trial release revoked.[4] The Court further found in support of its conclusions that Defendant had attempted to intimidate a witness at a state murder trial, coached the victim of an offense charged against him to repudiate his testimony, that Defendant is a gang member, and that Defendant had fled from law enforcement, requiring a SWAT team to effectuate his arrest. (*Id*. at 2-3).

## B. Legal Standard

Defendant states that he is bringing his motion "pursuant to 18 U.S.C. [§] 3142(f)(2)." (ECF 43 at 1). While the text of § 3142 does not provide for multiple detention hearings, subsection (f) notes that:

> The [detention] hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

---

[3] In what appears to be a scrivener's error, the written Detention Order (ECF 16) only shows that the Government sustained its burden as to the community safety inquiry. The Court, however, found in open court on the record that the Government had sustained its burden as to Defendant's risk of flight as well.

[4] Specifically, the Court noted that in Allen County Superior Court Case No. 02D05-1010-FB-197, in which Defendant was charged with robbery, Defendant had his bond revoked, then later had his state probation revoked, and finally had his reentry court placement revoked. Still more, in Allen County Superior Court Case No. 02D06-1505-F6-406, where Defendant was charged with resisting law enforcement, Defendant again had both his bond and reentry court placement revoked. Finally, in Allen County Superior Court Case No. 02D06-1805-CM-2016, Defendant had his suspended sentence revoked.

Thus, in order to reopen the hearing, a defendant must present evidence that was not previously available and is relevant to the determination of his risk of flight or danger to the community. *United States v. Hendon*, No. 08-CR-172, 2009 WL 2912906, at *2 (E.D. Wis. Sept. 10, 2009). The Court, though, does not need to hold an additional hearing if the moving party fails to reach this threshold showing. *See United States v. Sallay*, Cause No. 2:11-CR-015, 2011 WL 1344288, at *3 (N.D. Ind. Apr. 8, 2011); *United States v. Bernal*, No. 2:10-CR-109, 2010 WL 3039528, at *4 (N.D. Ind. July 30, 2010).

### C. Analysis

In his motion Defendant first argues that the Court found him to be "simply 'ineligible'" for release without adequately holding the Government to its burden. (ECF 43 ¶ 1). To the extent Defendant questions the Court's application of the law in its initial finding, a motion pursuant to § 3142(f) is the wrong vehicle to bring his challenge. If Defendant wishes to seek review of the Order by the District Judge, rather than just offering new evidence, he "may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). In any event though, Defendant's former counsel did argue that there were conditions that would assure his appearance, including electronic monitoring and confinement to a halfway house. The Court, however, found that such evidence was not strong enough to rebut the statutory presumption in favor of detention. As such, this argument does not constitute newly discovered evidence which would require reopening the detention hearing.

Defendant next contends that the opinions and evidence offered at the hearing were irrelevant to the present case. (ECF 43 ¶ 2). In support of his contention, Defendant claims that the evidence offered by the Government as to the YouTube video screenshots constituted

protected speech, and thus should not be held against him. (*Id.* ¶ 2.A). Defendant expands on this argument in his reply, claiming that his former counsel improperly failed to object to this evidence and argue for its exclusion.[5] (ECF 62 at 2). Defendant also contends that the Government failed to show that he posed a danger to society, that he possessed weapons on his person, or would have posed a threat to a specific person if released. (ECF 43 ¶ 3). Further, he argues that the Court should give little weight to the strength of the evidence against him because "the charges at this stage are only accusations" against him. (*Id.* ¶ 4). In any event, Defendant again claims that the Government failed to meet its burden regarding the danger to the community. (*Id.*).

Again however, these points raised by Defendant are primarily arguments how the Court should have considered or weighed the evidence presented against him at his initial hearing. Further, Defendant clearly would have known at the initial hearing his history on court supervision or release, and as to whether the firearm at issue in this case was on his person. Still more, as already mentioned, Defendant's former counsel has already had the opportunity to, and in fact did, raise questions as to the weight the YouTube video screenshots should be given, specifically cross-examining Officer Strayer on their First Amendment status and possible interpretations of them, and argued that Defendant had successfully completed periods of pretrial release and court supervision. Thus, these claims are hardly previously unknown information requiring a reopening of the detention hearing.

Similarly, Defendant argues that he now has gainful employment at "either/or Express Staffing, Ride N Drive Auto dealership, or Worldwide Inc. home improvement" and that if

---

[5] To the extent that Defendant is attempting to bring challenges to the admission and consideration of testimony and exhibits at the initial detention hearing, he should note that "the rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing." 18 U.S.C. § 3142(f).

released he would reside with his grandfather who would ensure that he would abide by his conditions of his release. (*Id.* ¶¶ 6, 8). Defendant also contends that he has strong ties to the community and that he has no passport and has never traveled outside of the county. (*Id.* ¶¶ 5, 9). As an initial matter, the Court again notes that Defendant's former counsel did argue that Defendant had, unverified, employment at Express Staffing and that he had ties to the community by way of his family and school. To the extent that Defendant now argues that he also has gainful employment at Ride N Drive and Worldwide Inc., the evidence may be "new" for the purposes of § 3142(f). However, the Court has already considered Defendant's potential employment and found detention to be proper. Thus, it is hard to see how evidence of additional potential employment would be "material," especially given the multiple factors weighing in favor of detention.

The proposed evidence that Defendant would reside at his grandfather's home is similarly immaterial. Defendant's former counsel had already argued that Defendant was willing to reside in some controlled environment, like a halfway house, before the Court found detention to be proper. Further, it was at his Grandfather's house where Defendant barricaded himself to evade arrest and where law enforcement found a firearm. *See United States v. Hester*, No. 08-CR-848, 2011 WL 124212, at *4 (N.D. Ill. Jan. 14, 2011) (denying the defendant's motion for bond and finding that the defendant's claim that he would reside at the address where narcotics were seized, leading to the defendant's arrest and charges, was inappropriate). Finally, Defendant's claims as to his family ties and lack of a passport are insufficient. Again, Defendant was aware of his ties to the community at his initial hearing. His community ties, international travel history, and lack of a passport were also all contained in the Pretrial Service Report which the Court reviewed in reaching its initial decision. Further, lack of a passport is not dispositive as to

7

flight risk. *See id.* at *4 ("Although Hester points out that his passport has been relinquished to the Chicago Police Department, he doesn't have to flee the United States in order to flee the jurisdiction and evade authorities.").

Defendant next argues that the Government improperly asserted that he was a flight risk "due to a failure to appear on 7/20/18" while he was in state custody. (ECF 43 ¶ 2.B). Besides that instance, Defendant claims that he has "always reported in with Courts, probation, parole, and home detention." (*Id.*). In reviewing the audio recording of the initial hearing, the Court found no reference to a failure to appear on the date in question. However, the Pretrial Report showed, and the Government argued that Defendant had in fact had multiple problems with Court issued supervision in the past. As the Court noted in its ruling in open court, Defendant had violated some form of bond, release, or suspended sentence in three separate state cases in the past ten years. As such, whether Defendant did or did not fail to appear on that specific date is immaterial given his extensive history of failing to abide by court-imposed restrictions.

As a final matter, Defendant claims that his pretrial detention has been a hardship to him and his family. (*Id.* ¶ 10). Further, Defendant argues that, as he is now proceeding *pro se*, he requires access to a law library. (*Id.* ¶ 11). Again, these allegations do not necessitate reopening the detention hearing. A defendant's *pro se* status alone does not require pretrial release. *See Hester,* 2011 WL 124212 at *2 n.1; *United States v. Price*, No.09-CR-30107, 2011 WL 4633098 at *1 (N.D. Ill. Oct. 4, 2011); *see also United States v. Chapman*, 954 F.2d 1352, 1362 (7th Cir. 1992) ("This court has consistently held that when a defendant (pretrial detainee) is offered the assistance of appointed counsel and refuses the same, no constitutional right exists mandating that the prisoner in the alternative be provided access to a law library should he refuse the service of court-appointed counsel." (internal quotation marks and citations omitted)). Further, while

pretrial detention is obviously a hardship to both Defendant and his family, it does not negate the fact that he is charged with offenses that carry a presumption of such detention and that at the initial hearing the Court received evidence of Defendant's extensive criminal history, gang membership, and attempts to avoid law enforcement. *See United States v. Brown*, Case No. 18-CR-237, 2019 WL 188386, at *2 (E.D. Wis. Jan. 14, 2019) ("[A]lthough I am sympathetic to the burden that Brown's pretrial incarceration places on his wife and young children, I do not find that this warrants releasing Brown. Brown is charged with a crime of violence which carries a presumption of detention.").

### D. Conclusion

In summary, Defendant's motion does not raise any new information necessitating the reopening of the detention hearing. Further, to the extent that Defendant is arguing that the Court improperly applied the law or weighed the evidence presented at the initial detention hearing, Defendant's claims are more properly bought in a motion pursuant to 18 U.S.C. § 3145(b). As such, Defendant's Motion for Hearing for Modification of Pretrial Detention Order (ECF 43) is DENIED.

SO ORDERED.

Entered this 17th day of December 2019.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge