# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CAUSE NO.: 1:19-CR-49-HAB-SLC |
| TIMOTHY L. COATS | |

## OPINION AND ORDER

Defendant Timothy L. Coats is facing gun and drug charges as set forth in a seven-count Indictment. On November 6, 2019, the Court granted Defendant's request to proceed pro se. Since then, Defendant has filed several motions requesting various forms of relief ranging from dismissal of the Indictment to exclusion of evidence seized during the execution of search warrants. Although Defendant has submitted separate motions, similar themes are weaved throughout each motion, leading to repetition and overlap. For the sake of clarity, the Court will address only the main theme of each motion and the relief sought therein. The Court will use a separate order to resolve any matters not ruled upon in an opinion, but that are mentioned in the motion that the opinion is intended to address.

In this Opinion and Order, the Court will rule on Defendant's Motion for Franks Hearing [ECF No. 42], to which there has been a response [ECF No. 52] and a reply [ECF No. 59]. In his Motion, Defendant challenges the issuance of search warrants issued on April 11 and 30, 2019, during an attempted murder investigation. He argues that the search warrants were only issued because the detective deliberately or recklessly presented false, material information in the affidavits he presented to the issuing judge.

The Government asserts that Defendant has not made the substantial preliminary showing necessary to obtain a hearing. The Court agrees and, for the reasons set forth below, denies Defendant's Motion.

## BACKGROUND

Defendant became the target of an investigation for distribution of drugs. During the investigation, agents used informants to make controlled drug buys of marijuana and pills from Defendant on dates ranging from January 24 through March 25, 2019. The first four counts of the Indictment charge Defendant with violations of 21 U.S.C. § 841(a)(1) based on these transactions. As a result of a separate investigation conducted by the Fort Wayne Police Department, evidence was discovered on April 11, 2019, that was used as the basis for Counts 5, 6, and 7 of the Indictment. Count 5 charges Defendant with possessing with intent to distribute a controlled substance and Count 6 charges that he possessed a firearm in furtherance of that drug trafficking crime. The same firearm is the subject of Count 7, which charges Defendant with unlawful possession of a firearm due to his prior felony convictions.

The Fort Wayne Police Department's investigation began on March 25, 2019, in response to a shooting that took place in Fort Wayne on that date. Although Defendant became the suspect in that shooting based on statements from the victim and other witnesses, and was arrested for attempted murder, aggravated battery, and possession of a firearm by a serious violent felon, the State of Indiana moved to dismiss the charges on May 29, 2019. The State submitted that the dismissal was supported by an affidavit

from the victim recanting his previous statement. Additionally, the victim informed the prosecuting attorney during a meeting on May 29 that he could not identify the shooter.

On May 31, 2019, a Criminal Complaint, completed by Special Agent Joseph Gass of the FBI's Safe Street Gang Task Force, was filed against Defendant in this cause. It described the controlled drug transactions from January 24, March 19, March 20, and March 25, 2019. The Complaint noted that the March 25 shooting investigation had led to the warrant for Defendant's arrest and to the issuance of search warrants on April 11. During the execution of the search warrants, officers located distribution quantities of controlled substances and firearms. A grand jury thereafter indicted Defendant on June 20, 2019.

## ANALYSIS

### A. Standard of Review

Search warrant affidavits are presumed to be valid. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). However, a search warrant is invalid if police officers obtain it by deliberately or recklessly providing the issuing court with false, material information. *United States v. McMurtrey*, 704 F.3d 502, 504 (7th Cir. 2013). In *Franks v. Delaware*, the Supreme Court defined the procedure, evidentiary burdens, and proper remedies associated with a defendant's attack on the truthfulness of statements made in a sworn affidavit supporting the issuance of a search warrant. To obtain a *Franks* hearing, the defendant must make a "substantial preliminary showing" of (1) a material falsity or omission that would alter the probable cause determination, and (2) a deliberate or reckless disregard for the truth. *McMurtrey*, 704 F.3d at 508.

"These elements are hard to prove, and thus *Franks* hearings are rarely held" because a defendant seeking a *Franks* hearing "bears a substantial burden to demonstrate probable falsity." *United States v. Maro*, 272 F.3d 817, 821 (7th Cir. 2001) (citations omitted). "Conclusory, self-serving statements are not enough to obtain a *Franks* hearing." *United States v. Johnson*, 580 F.3d 666, 671 (7th Cir. 2009) (citing *Franks*, 438 U.S. at 171). Allegations of falsehood or reckless disregard for the truth must be "accompanied by an offer of proof." *Franks*, 438 U.S. at 171.

The Seventh Circuit has interpreted the holding of *Franks* to also apply to omissions. *United States v. Williams*, 737 F.2d 594, 604 (7th Cir. 1984) (internal citations omitted). Therefore, a defendant may also challenge an affidavit by showing that the affiant intentionally or recklessly omitted material information. *See id.*; *see also Shell v. United States*, 448 F.3d 951, 958 (7th Cir. 2006); *United States v. Pace*, 898 F.2d 1218, 1232–33 (7th Cir. 1990).

**B.     The Affidavits**

As noted by the Government, the search warrant affidavits submitted to a state court judge on April 11, 12, and 30, 2019, although directed at different places or items, are premised on substantially the same set of facts. In each instance, FWPD Detective R. Sutphin submits that the following information is within his personal knowledge:

> On 3/25/19 officers of the Fort Wayne police department were dispatched in reference to a male that was in the yard of 3016 Adams St that had been shot. Upon arrival of Emergency responders, Aaron Wiegand was found in critical condition and lifesaving care was started immediately. The Affiant reviewed the 911 calls and found a caller advised that she heard shots and then looked and saw a grey or dark colored SUV driving away North on Adams. Officers and detectives were given several other reports involving

4

> grey and dark colored SUV leaving the area North on Adams just after the shots were heard as well. Gary Thomas advised Detective R Parrish that the Victim lived at 3016 Adams and that Aaron Wiegand had just gone outside the home when he heard the shots and went to see what was happening. Thomas noticed the Dark SUV and driving away and noticed Wiegand on the ground next to his car. He went to Wiegand and pulled him closer to the house and he was unsure if the shooter was still nearby.

(Search Warrant Aff., ¶ 1, ECF Nos. 52-1, 52-2, 52-3, 52-4, 52-5 (typographical errors in original).)

Defendant does not challenge the information provided in paragraph 1 of the search warrant affidavits. The focus of Defendant's claim that he is entitled to a *Franks'* hearing is paragraph 2, where Detective Sutphin swore as follows:

> Detective B MacDonald interviewed the Victim Aaron Wiegand at the hospital when he regained consciousness several days after being shot on April 4, 2019. Aaron advised that he had been in an argument with his girlfriend and she left the house and he went and sat in the passenger seat of his car because the driver door would not open. Aaron said a Dark SUV pulled up beside the car and the driver pulled a mask off his face and he saw his face. He said he was nervous because of the person and the driver pointed a gray handgun at him and began shooting. Aaron advised that he jumped out the passenger window of his car and was being shot as he did this. Detective MacDonald asked if he knew who the person was and Wiegand said it was Timothy Coats. MacDonald showed Wiegand a photo Array and he positively identified the Timothy Coats DOB xxxx, 1993 as the person that was driving the SUV and shot him.

(*Id.* ¶ 2 (typographical errors in original).)

The remainder of the information provided in the affidavits is intended to connect the Defendant, and thus potential evidence of the shooting, to the places to be searched. For example, in the affidavit for the home on Fruehauf Drive, Detective Sutphin explains that, in another investigation run by the FBI, Defendant had been documented driving a dark gray over black Jeep Cherokee with a specific dealer license plate number.

5

Defendant fled when officers attempted to stop the vehicle on April 11, 2019. However, the officers then observed Defendant walking up to the front door of the home on Fruehauf Drive, which belonged to Defendant's grandfather. The Jeep they had been pursuing was parked in the rear of the house.[1]

The Court will turn its focus to the shooting victim's identification of Defendant, as it is central to Defendant's Motion. According to Defendant, the affidavits contained the victim's identification of Defendant as the shooter despite the interviewing detective's knowledge that the victim was too impaired to make a proper identification. In support, Defendant points to the dismissal of the state charges on May 29, 2019, and an affidavit that the victim wrote and signed on April 18, 2019, stating that he did not see Defendant shoot him on March 25, 2019, that he does not know who shot him, and that he is not willing to testify.

Additionally, attached to Defendant's Reply is an undated letter that purports to be from the shooting victim to Defendant's counsel. The author of the letter states that he made a false statement when he said that Defendant shot him. The author explains that he was impaired due to pain medication and that he has brain damage from injuries he sustained in a car accident in July 2018. The author of the letter also advises that he did

---

[1] "Probable cause is established when, based on the totality of the circumstances, the affidavit sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime." *United States v. Peck*, 317 F.3d 754, 756 (7th Cir. 2003). Defendant makes some mention in his Motion that the facts, even as alleged, do not establish the requisite probable cause to search a particular place. The Court does not conduct a four-corners analysis of the affidavits, as Defendant's arguments in this regard are not developed. Likewise, the Court need not address Defendant's passing argument that items seized were outside the scope of the warrants. Defendant has filed separate motions that further advance that claim.

not see who shot him because the shooter was wearing a mask, and he provides an assurance that he never had any problems with Defendant.

The dismissal of the State charges is, of course, not indicative of whether the affidavits contained materially false information. The prosecutor for the State moved to dismiss the charges in late May after meeting with the victim and learning that he maintained he could not identify the Defendant. But that information contradicted what the victim told the detective while he was still in the hospital. There is no indication in the record, much less a sworn statement, that the victim did not relay the information surrounding the shooting as described in paragraph 2 of the affidavits. The victim's letter, in addition to not qualifying as a sworn statement, contains no denial that the victim identified Defendant, by name, as the person who shot him, or that he selected his photograph from a photo array. Thus, nothing in the letter contradicts the affidavits' recounting of the hospital interview.[2]

Defendant argues that the Detective Sutphin or Detective MacDonald should have known that the victim was providing unreliable information. This, he asserts, is because the victim was under the influence of pain medication and suffers from "severe mental instabilities." (Reply, ECF No. 59.) Again, not only does this argument rely on unsworn

---

[2] The letter also asserts that "people" showed the victim a video of Defendant rapping that also "showed a person getting shot in the car." But the video "was dropped [i.e., released] before" the victim was shot. The Court presumes that this is intended as proof that the shooting in Defendant's rap video was not the March 25 shooting. The Court also presumes that the video is what Defendant is referencing when he argues that the police used unlawful suggestive tactics in their investigation. In addition to the statements in the letter failing to have any evidentiary value because they are unsworn, they are vague. The letter does not identify the "people" who showed the victim the video. The letter also does not indicate when the victim was shown the video.

statements, on its face it does not show how either detective would have known about brain injuries purportedly sustained in 2018, much less how those injuries would have impacted his memory. As for the side effects of pain medication, there is no reason to believe that the interviewing detective would not have performed an assessment of the victim's state of mind during the interview and been able to determine whether he was too impaired to provide reliable information. Officers do not have a "constitutional obligation to exclude every possibility" that a victim is "not telling the truth," unless the circumstances are "such that a reasonable officer would become suspicious." *Beauchamp v. City of Noblesville, Ind.*, 320 F.3d 733, 744–45 (7th Cir. 2003). Defendant has cited to nothing that would have given the detective reason to believe that the target of a shooting that had occurred just ten days earlier was fabricating an identification when he named Defendant as the perpetrator of the attack. *Cf. United States v. Olson*, 408 F.3d 366, 370 (7th Cir. 2005) (explaining that credibility of an informant, especially one recently arrested, should be viewed with skepticism due to strong incentive to shift blame or downplay comparative roles).

Additionally, the detective did not obscure the fact that the victim was in the hospital and had recently been unconscious. He readily provided those details in the affidavits to the issuing judge. Indeed, Defendant can point to no material information known to the detective that he omitted from the affidavits when describing the hospital interview.

Defendant also contends that the victim identified the vehicle involved as a tan Suburban, not a gray or dark SUV. There is no explanation as to why Defendant believes

this to be the case. Allegations of falsehood or reckless disregard for the truth must be "accompanied by an offer of proof." *Franks*, 438 U.S. at 171. Defendant's "conclusory, self-serving" statement contradicting the affidavits that were submitted to the judge is "not enough to obtain a *Franks* hearing." *Johnson*, 580 F.3d at 671 (citing *Franks*, 438 U.S. at 171); *see also United States v. Reed*, 726 F.2d 339, 342 (7th Cir. 1984) ("[T]he *Franks* presumption of validity of an affidavit supporting a search warrant cannot be overcome by a self-serving statement which purports to refute the affidavit.") (citation omitted). Accordingly, there is no need to consider further Defendant's claim that Detective Sutphin made a false statement when he averred that the victim told Detective MacDonald that the shooter pulled up beside him in a dark SUV.

The April 30 affidavit requires additional discussion. Defendant could, at least based strictly on the timeline, potentially make an argument that the victim's April 18 affidavit—stating that he did not know who shot him—was a material omission from the April 30 affidavit. The problem, however, is that the date the document was signed is not indicative of when Detective Sutphin became aware of it. There is no indication when or how the affidavit was provided to a person who would have informed Detective Sutphin about it.

Regardless of whether the victim's identification was accurate, Defendant has not shown that Detective Sutphin deliberately provided the issuing judge with false, material information, or that he recklessly did so. Detective Sutphin neither entertained serious doubts about the information the victim provided to Detective MacDonald, nor was there an "obvious reason to doubt the truth" of the victim's statement to Detective MacDonald.

9

*See Johnson*, 580 F.3d at 670 (describing the standard when officer submitting the affidavit obtains information from a third party, such as an informant). Even if additional information surrounding the victim's identification existed, the record does not suggest that the information was "*intentionally* withheld . . . to trick the judge," *see United States v. Swanson*, 210 F.3d 788, 790 (7th Cir. 2000); *id.* at 791 (noting that "a little negligence—actually even a lot of negligence—does not the need for a *Franks* hearing make"), or that it would have altered the probable cause determination.

## CONCLUSION

For the reasons stated above, the Court DENIES Defendant's Motion for Franks Hearing [ECF No. 42].

SO ORDERED on December 19, 2019.

                                         s/ *Holly A. Brady*
                                         JUDGE HOLLY A. BRADY
                                         UNITED STATES DISTRICT COURT